KIRK WITHERSPOON *et al.*, Plaintiffs-Appellants, v. THE CITY OF MOLINE, Defendant (Craig Amundsen *et al.*, Intervenors-Appellees).

Third District   No. 3—91—0451

Opinion filed April 23, 1992.

John W. Robertson, of Barash, Stoerzbach & Henson, of Galesburg, for appellants.

Van Hooreweghe, Fackel & Thuline, of Moline (Francis Van Hooreweghe, of counsel), for appellees.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

On November 7, 1989, the Moline city council, in a nine-to-five vote, denied an application of plaintiffs, Dr. Kirk and Carol Witherspoon, for a special use permit to conduct a "home occupation" in their Moline residence. Plaintiffs pursued their cause in the circuit court of Rock Island County, which denied relief. In this appeal, plaintiffs contend that the circuit court erred in refusing their request to declare the zoning ordinance unconstitutional as applied by the city council in denying their request for a special use permit and that the circuit court's decision is contrary to the manifest weight of the evidence. For reasons that follow, we reverse.

Plaintiffs' residence is located on a 2.1-acre wooded lot at 722 23rd Avenue Court in Moline. It is zoned R-1 (single-family residential for large dwellings) and is adjoined by the intervenors' properties zoned R-2 (single-family residential for slightly smaller dwellings). Plaintiffs built their home in 1988, incorporating an area designed as a professional office and waiting area after having twice applied for a special use permit. Their first application was denied in 1986. The second application was withdrawn by plaintiffs before a vote was taken by the plan commission in the spring of 1988. The application currently at issue was filed in August 1989, after construction was completed. It was denied by the plan commission and the planning committee before the city council held public hearings and voted on the application in November 1989.

Plaintiffs' original complaint in the circuit court sought administrative review and reversal of the city council's decision. It was later amended to request declaratory judgment instead. Although named as a defendant in the suit, the City of Moline has neither appeared nor

answered the complaint. Rather, the intervenors, neighbors of the plaintiffs, have defended the action. The circuit court conducted a bench trial "de novo" March 19-20, 1991, receiving into evidence testimony and exhibits presented by the plaintiffs and the intervenors. On May 29, the court entered its order finding:

"1. That the denial of the special use permit was a product of a proper application of legislative discretion, and

2. That the action[s] of the [city council of the City of Moline] in the exercise of their proper delegated legislative authority were in compliance with the zoning laws of Rock Island County, and

3. That the actions of the [city council of the City of Moline] have not been shown to be unreasonable, arbitrary or capricious by clear and convincing evidence."

■ Initially, we consider that plaintiffs ultimately elected to proceed in court on a complaint for declaratory judgment, challenging the validity of the ordinance as applied, and to abandon their request for administrative review of the city council's decision. In so doing, plaintiffs accepted the burden of proving to the court by clear and convincing evidence that the zoning ordinance, as applied, "is arbitrary and unreasonable and without substantial relation to the public health, safety, comfort, morals or general welfare." (*Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 111, 324 N.E.2d 406, 408-09.) Having abandoned their suit for administrative review, the plaintiffs were not restricted to the evidence admitted before the city council. They were entitled to a trial directly challenging the constitutionality of the ordinance as applied to their situation and the concomitant right to present evidence in support of their position. (*Perko v. City of Palos Heights* (1971), 1 Ill. App. 3d 505, 274 N.E.2d 652.) In this appeal, we must determine whether the trial court's decision to deny plaintiffs' request for relief was contrary to the manifest weight of the evidence.

The evidence admitted at trial includes a copy of the Moline city zoning ordinance. According to sections 10.2—1.2 and 10.3—1 of the ordinance, "home occupations" are permitted in both R-1 and R-2 districts. "Home occupation" is defined in section 3.2(47) as

"an occupation or profession customarily carried on by an occupant of a dwelling unit as a secondary use, and which use is clearly incidental to the use of the dwelling unit for residential purposes.

* * *

(2) Home occupations include, but are not limited, to the fol-

lowing: real estate broker or salesman, art studio, dressmaker, professional office of physician, dentist, architect, engineer, accountant, and teaching music. The following are not permitted in the R-1 zoning district: barber shop, beauty shop, teaching of arts or crafts.

* * *

(4) Sufficient offstreet parking spaces shall be provided for the home occupation for each client, patient, student, etc. The parking shall be in addition to that required *** for the principal use." Moline, Ill., Zoning Ordinance §3.2(47).

Dr. Witherspoon, a clinical psychologist, testified that plaintiffs desired the special use permit because of the tax advantage of having a home office and because Carol Witherspoon, the only person working for him, suffers from Crohn's disease, making it difficult for her to work outside the home. Dr. Witherspoon further testified that some of his clientele, such as professionals, would feel more comfortable coming to a home office than to one more publicly sited. He opined that a public benefit could be gained if people needing his services were relieved of social stigma by being invited to the privacy of his rather secluded home office. He further testified that there would be no visits by clients posing a potential danger to others, since Dr. Witherspoon would continue his practice of treating such individuals at the Robert Young Mental Health Center. Using photographs of the home and surrounding property, Dr. Witherspoon testified that the lay of the land, a 750-foot private driveway, approximately 300-foot sideyards, and the trees protected the neighboring properties from view. The office and waiting-room area comprise 25% of the home.

Dr. Witherspoon explained that he had significantly modified his application for a special use permit since initially being denied such in 1986. The current application states that no group therapy will be given in the home, no additional employees will be assisting in the practice, he will see on average no more than six clients per day, he will see clients only five days a week, and he will make no appointments after 5:30 p.m. No signs would be used to advertise Dr. Witherspoon's home office. Dr. Witherspoon estimated that the traffic flow to and from his property would be unchanged if the permit were granted, because additional traffic by clients would be offset by the reduction in travel by himself and his wife.

Also testifying on behalf of the plaintiffs was a neighbor, Katherine Peterson. Mrs. Peterson testified that she and her husband have lived on 23rd Avenue Court since before the Witherspoons moved in. She did not oppose the Witherspoons' application and did

not believe that the traffic flow in the residential neighborhood would be affected by the psychologist's home office practice as proposed.

The township assessor, Betty Cruse, testified that according to her assessment, the Witherspoon home had a value of about $228,000, as compared to about $90,000 for the neighboring properties. She opined that permitting the home occupation as proposed would not affect property values in the surrounding residential neighborhood because of the way that the Witherspoon home is set apart from the others.

Karen Franklin, an urban planner for Iowa City, testified for plaintiffs as an expert witness. Ms. Franklin stated that she had visited the home and the neighborhood in question and had reviewed the Witherspoons' application and the zoning ordinance with respect to home occupations. Ms. Franklin expressed her opinion that the Witherspoon application satisfied all criteria for a "home occupation" as defined by the zoning ordinance and further stated that she had no evidence indicating that the city council's denial of the application was reasonable. Ms. Franklin would not, however, give an opinion as to whether the council's denial was "arbitrary and capricious," because she felt that that expression was a term of art in law upon which she was not competent to give an opinion.

Finally, two employees of the City of Moline testified for the plaintiffs—Harold Swanson, land development coordinator in the City of Moline Planning Department, and John Hoffstattar, director of engineering. Swanson testified that based on his investigation, the Witherspoon special use application satisfied all relevant criteria for a home occupation and it would not be harmful to the surrounding neighborhood. Hoffstattar testified that the traffic that would be generated by the proposed use would be akin to an additional house. He did not consider that to be a significant amount of traffic.

Testifying on behalf of the intervenors, in addition to three intervenors, was Norman Moline, a professor of geography at Augustana College, who testified as an expert witness. The intervenors all expressed their desire to keep the residential character of the neighborhood and their fear that by granting the Witherspoons' application, the floodgates for other business enterprises would be opened up. They further expressed concern that their property values might be diminished and that Dr. Witherspoon might not adhere to the restrictions proposed with respect to the number of clients he would treat at the home office.

Mr. Moline testified that he had investigated the neighborhood in question and had formed the opinion that the decision of the city

council denying the Witherspoons' application was not arbitrary, capricious or unreasonable. Mr. Moline explained that he saw no particular public need to establish a psychologist's office in a residential neighborhood, that there were sufficient commercial locations available for such, and that there was no indication that the neighborhood in question had anything other than residential uses at the present time. In Moline's opinion, the council's decision was consistent with the comprehensive plan for the City of Moline, and the city has the right to restrict uses of its residential area as it deems fit.

At the close of all evidence and after submission of written closing arguments, the circuit court entered its findings for the intervenors.

The standard of proof at trial in a case such as this was stated by our supreme court in *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 111-12, 324 N.E.2d 406, 408-09:

> "The zoning ordinance *** is presumed valid, and plaintiffs carry the burden of establishing that the existing classification is unreasonable and oppressive as applied to their land. [Citation.] The plaintiffs must establish by clear and convincing evidence that the existing ordinance, as applied to their property, is arbitrary and unreasonable and without substantial relation to the public health, safety, comfort, morals or general welfare. [Citation.] Specifically, when plaintiffs have been denied the issuance of a special use permit, as sought in this case, they carry the burden of showing that such denial bears no real and substantial relation to the public health, safety, morals or general welfare. [Citation.]
>
> The general factors considered in arriving at this determination include the uses and zoning of nearby properties, the extent to which existing zoning diminishes the property's value and the proposed zoning enhances it, the suitability of the property for the purposes permitted under the existing zoning, and the relative gain to the public as compared to the hardship imposed upon the property owner by the existing and the proposed zoning uses. [Citations.] Ultimately if it clearly appears that the relative gain to the public is small when compared with the hardship imposed upon the property owner by the zoning restriction, there is then no valid basis for the exercise of the police power to so limit the owner's right to the use of his property. [Citations.]"

■ Applying the foregoing test to the instant case, it is clear to us that the great weight of the evidence supports plaintiffs' position,

and that the denial of their permit was an unreasonable and oppressive application of the zoning authority. The evidence establishes that the current zoning classification permits limited home occupations similar to that proposed by the Witherspoons (*e.g.*, real estate broker, physician, dentist, architect, engineer or accountant's office) which would presumably entail occasional client visits. However, it does not appear from the evidence admitted at trial that any such home occupations currently operate in the surrounding neighborhood. As we see it, the primary gain to the public in denying the permit is simply maintaining the neighborhood's status quo. The intervenors' expert, Moline, expressed his opinion that the potential gain to the public in granting the permit was tenuous, at best. This testimony, however, failed to address the relevant question of what public benefit, if any, would be gained by *denying* the permit.

On the other hand, the evidence clearly establishes that the residence in question is set well apart from the rest of the homes on 23rd Avenue Court, and the evidence supports the Witherspoons' claim that their proposed use, as restricted in the current application, would not interfere with or impact upon the neighbors' peaceful enjoyment of their properties. Competent evidence admitted at trial also tends to show that the value of other properties would *not* be adversely affected by the Witherspoons' proposed use. Further, it is undisputed that Carol Witherspoon's medical condition is such that a far greater hardship is imposed upon her if she cannot work in the home.

The testimony of record establishes that prior to the Witherspoons' construction, their lot had been vacant. Neighborhood children played there. Although four prior purchasers had attempted to develop the site, none had been successful. These aborted efforts, it appears, were the source of some of the neighbors' concerns before the Witherspoon home was completed. Because of the ravines surrounding the lot, it was only at great expense that the Witherspoons were able to hook up to city utilities. The grant of a special use permit could allow the Witherspoons to recoup some of this expense as a consequence of favorable tax treatment and reduced office costs elsewhere.

It is clear to us that the economic advantages to the Witherspoons to be gained by granting the permit and the hardship imposed upon them by denying it far outweigh any health, safety and welfare consequences to the public in denying it. The intervenors understandably wish to preserve the value of their properties, and they fear the unknown risks that any home occupation in the neighborhood might pose. However, in this case, they have failed to point to any concrete

or substantial detriment or property value diminution that the Witherspoons' proposed use of their property could bring about. While we do not wish to leave the impression that we approve of the tactic of building a structure incorporating a use specifically denied in proper administrative proceedings, we do not believe that a proper sanction for such conduct is judicial approval of the denial of that use for no good reason.

In sum, we hold that the manifest weight of the evidence establishes that plaintiffs met their burden of showing by clear and convincing proof that the denial of their special use permit was arbitrary, capricious and unreasonable. The judgment of the circuit court of Rock Island County is, accordingly, reversed.

Reversed.

SLATER and HAASE, JJ., concur.